## MANISCALCO v. UNITED STATES.
### No. 2584.

Circuit Court of Appeals, First Circuit.

Nov. 28, 1931.

G. Philip Wardner, of Boston, Mass., for appellant.

Ellen L. Buckley, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., and Hubert C. Thompson, Asst. U. S. Atty., both of Boston, Mass., on the brief), for the United States.

Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

BINGHAM, Circuit Judge.

This case is an appeal from a decree of the District Court for Massachusetts ordering condemned as forfeited to the United States the American gas screw Automatic, for an alleged violation of section 4377 of the Revised Statutes (46 USCA § 325), that she was unlawfully employed in a trade other than that for which she was licensed, in that she was (1) "employed in trade and traffic in intoxicating liquors, that is to say, that said vessel unlawfully imported into the United States intoxicating liquors for beverage purposes," and (2) in that "said vessel was then and there employed in trade and traffic in intoxicating liquors, that is to say, the said vessel did then and there unlawfully transport intoxicating liquor for beverage purposes."

The contention is that the forfeiture of the vessel was improperly decreed under section 4377; that the government could not enforce a forfeiture under that section, but must proceed under section 26 of title 2 of the National Prohibition Act (27 USCA § 40).

The government's evidence showed that on January 23, 1931, at about 8:45 a. m., the Automatic, a fishing vessel, came from the harbor through the L Street bridge over Reserved Channel at South Boston and went to an old wharf at the Bay State mill yard; that one Horton, a customs guard, while on his way to work that morning, saw the Automatic after she had come through the draw at L Street bridge over Reserved Channel, and when she was some twenty feet from another boat, the Eva, lying at the old wharf; that he saw two men, who were not identified, get off and tie her up to the Eva; that the Automatic had snow on her deck, and ice on her bow, along her water line, and on her rigging, indicating that she had been to sea; that the night of January 22–23 was cold; that the wind had been blowing, and there was a heavy sea offshore; that it was unusual to see a fishing vessel in that vicinity heavily loaded and sitting low in the water, covered with snow and ice, and Horton's suspicions were aroused; that he reported the same to Deputy Collector of Customs Finnigan; that, at Finnigan's direction, the customs boat, having Horton on board as engineer and several customs inspectors, went that forenoon through the draw, and found the Automatic alongside the Eva; that the customs inspectors boarded her between 10 and 11 a. m., found no one on board, but found her hatches filled with liquors; that the liquors were of foreign origin, and came from the plant of the Distilleries Corporation, Limited, at Montreal, Canada; that the inspectors seized the liquors and took possession of the boat; and that a sample of the liquors was later taken and analyzed, showing that it was whisky with 51 per cent. of alcohol.

There can be no doubt that the inspectors had reasonable ground to believe that the law was being violated on the Automatic, justifying their boarding and searching her while tied up at the wharf, and that, by the search, it was discovered that she had on board intoxicating liquors in violation of law. No one was on board at the time of the search; and, while liquors were found, no one was discovered in the act of transporting them in the Automatic; consequently no arrest was made.

■ In this situation there was no discovery warranting a seizure of the liquors and vessel until the search was had, and by the search the officers failed to "discover any person in the act of transporting in violation of law, intoxicating liquors in" the vessel, for the vessel was then tied up at the wharf, and no person was present transporting liquors. We therefore regard the case as concluded by our opinion in Corriveau v. United States (Powell v. United States), 53 F.(2d) 735, decided November 28, 1931; and that the government was authorized to proceed under the provisions of section 4377 in the forfeiture of the vessel. See also Alksne v. United States (C. C. A.) 39 F.(2d) 62.

■ Since this case has been before us on appeal, the owner has applied to us for release of the vessel on bond under the provisions of section 938 of the Revised Statutes (28 USCA § 751), and the question is whether this Court of Appeals is authorized under section 938 to make such order. We think it is not; that "the court" mentioned in that section is the trial court, which, in this instance, is the District Court, and that such application should be made to that court.

The appeal record does not show that an application was made to the District Court for release of the vessel on bond, and consequently the question of the owner's right to release of the vessel under section 938 is not before this court. But we held in United States v. Davidson, 50 F.(2d) 517, where the question was saved for our consideration, that the District Court's order granting the release of a vessel on bond, seized for violation of law relating to the enrolling and licensing vessels, was proper, and that the statute was mandatory, where such a ground of forfeiture was relied upon.

It is stated by counsel in open court, without contradiction, that application was made in the District Court for release of the vessel on bond and denied; and that this took place prior to the rendition of our decision in United States v. Davidson. In this situation we think the decree of the District Court should be affirmed, subject to the right of the owner to renew his application in the District Court for release of the vessel.

The decree of the District Court is affirmed, subject to the right of the claimant to apply to that court for release of the vessel on bond.