## UNITED STATES v. CORRIVEAU.
### No. 2606.

Circuit Court of Appeals, First Circuit.
Feb. 25, 1932.

Charles H. Eden, Asst. U. S. Atty., of Providence, R. I. (Henry M. Boss, Jr., U. S. Atty., of Providence, R. I., on the brief), for the United States.

Mortimer W. Newton, of Providence, R. I. (Joseph E. Fitzpatrick, of Providence, R. I., on the brief), for appellee.

Before BINGHAM and WILSON, Circuit Judges, and MORTON, District Judge.

BINGHAM, Circuit Judge.

This is an appeal from a decree of the District Court for Rhode Island dismissing a libel seeking forfeiture of the American gas screw Overland and ordering her discharge from arrest. In the libel forfeiture was sought for alleged violation of section 4377 of the Revised Statutes (46 USCA § 325), in that she was unlawfully employed in a trade other than that for which she was licensed, "an illegal trade, to wit, the trade of unlawfully transporting or unlading intoxicating liquor containing more than one-half of one per cent. or more of alcohol by volume, fit for beverage purposes"; and (2) for the violation of section 453 of the Tariff Act of 1930 (19 USCA § 1453), in that her cargo of merchandise, consisting of intoxicating liquors of a value of more than $500, or a part thereof, was unladen from said vessel without a special license or permit therefor.

The ground on which the court dismissed the libel was that the government could not enforce a forfeiture under these provisions, but must proceed under section 26 of title 2 of the National Prohibition Act (27 USCA § 40).

The facts shown in evidence, so far as appears from the record, are as follows: On January 27, 1931, at 2:30 a. m., picket boat C. G. 2343, in charge of Boatswain Mate Second Class Michael Mackin, entered the harbor at the mouth of Sakonnet river and turned the boat's searchlight on the wharf back of the breakwater; that the light disclosed men on the wharf and on the Overland, which was tied to the wharf, engaged in transferring sacks from the Overland to the wharf; that there were some trucks on the wharf at the time; that the picket boat put a searchlight on its ensign, gave a signal to the men to halt, and, when they did not, fired a burst of machine gun bullets over their heads; that Mackin immediately boarded the Overland at the wharf and found on board in the engine room one George H. Hoerman, who is alleged in the libel and admitted in the claimant's answer to be the master of the Overland; that the other men who were on the deck and on the wharf escaped; that a quantity of liquor was found on board; that the whole cargo consisted of twelve kegs of pure Islay malt and 464 sacks of foreign assorted intoxicating liquors appraised at a domestic value of $16,316.25; that all 12 kegs and about 50 sacks of the liquor were on the wharf, the remainder being on board the Overland; and that the appraised value of the Overland was $4,200.

The cargo was seized, the Overland was taken possession of, Hoerman was arrested, and the vessel and her cargo were taken to Providence and delivered into the custody of the collector of customs. Hoerman, the master, when questioned by the custom agents, stated that the Overland sailed from a shipyard at Fall River, Mass., and that when she left that yard there was no liquor on board, and that he did not run to any place but Sakonnet Point.

The sole question in the case is whether, on the facts above stated and such inferences as the court below was warranted in drawing therefrom, the government was required in the condemnation of the vessel to proceed under section 26. It is plain that the coast guard had reasonable ground to believe that the law was being violated on the Overland and was justified in boarding and searching her, and that, by the search, he discovered that she had on board intoxicating liquor in violation of law. It is also plain that, after boarding the vessel, the liquors were seized, possession of the vessel was taken, and Hoerman, the master of the vessel, was arrested; it then being discovered that he was making use of the Overland transporting liquor.

The District Court, in entering the decree that it did and ruling that the government must proceed under section 26, must have found from the admitted facts and other testimony in the case that Hoerman, the master of the vessel, at the time the discovery took place, was engaged in making use of the Overland in transporting intoxicating liquors within the territorial waters of the United States, for section 26 provides that, when the officer "shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any * * * water * * * craft, or other vehicle, it shall be his duty to seize any and all intoxicating liquors found therein being transported

contrary to law," take possession of the vehicle, and "arrest any person in charge thereof." The question, therefore, reduces itself to this, whether the District Court, on the evidence before it, was warranted in finding that, at the time Mackin boarded the vessel, he discovered any person making use of her in transporting intoxicating liquors, in violation of law; and we are of the opinion that it was. See Richbourg Motor Co. v. United States, 281 U. S. 528, 50 S. Ct. 385, 74 L. Ed. 1016, 73 A. L. R. 1081; Colon v. Hanlon (C. C. A.) 50 F.(2d) 353, 355; Corriveau v. United States, 53 F.(2d) 735, decided by this court November 28, 1931; Maniscalco v. United States, 53 F.(2d) 737, decided by this court November 28, 1931.

The decree of the District Court is affirmed.