STUCKERT MOTOR COMPANY, INC., Petitioner, *v.* DISTRICT COURT OF PUERTO RICO, SAN JUAN SECTION, PEDRO PÉREZ PIMENTEL, JUDGE, Respondent; COMMONWEALTH OF PUERTO RICO, Intervener.

No. 1960. Argued February 4, 1953.—Decided April 7, 1953.

*James R. Beverley, F. Castro Amy* and *R. Rodríguez Lebrón*, for petitioner. *J. B. Fernández Badillo, Acting Secretary of Justice* and *Omar Cancio Sifre, Assistant Attorney General*, for intervener, defendant in the main action.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

This is a suit filed in the former district court by Stuckert Motor Company Inc. against the People of Puerto Rico in which it is alleged that two motor vehicles owned by the plaintiff, a De Soto and a Studebaker, had been forfeited by the defendant in contravention of § 37 of the Weapons Law

of Puerto Rico.[1] The parties having stipulated the facts, the trial court held that the De Soto had been improperly forfeited and ordered the defendant to return it to the plaintiff. However, it affirmed the forfeiture of the Studebaker. We granted the plaintiff's petition for certiorari to review the judgment of the former district court insofar as it affirmed the forfeiture of the Studebaker.

The stipulation of facts on which the lower court based its judgment was as follows:

"1. On March 21, 1952 the People of Puerto Rico, acting through Francisco Coll Moya, Assistant District Attorney, notified the plaintiff Stuckert Motor Company Inc. that on March 20, 1952 it had forfeited the De Soto automobile, with license number 39462, and on the said March 20 the plaintiff was in fact deprived of the possession of the said automobile, which is its property, by peace officers.

"2. On March 21, 1952 the People of Puerto Rico, acting through Francisco Coll Moya, Assistant District Attorney, notified the plaintiff Stuckert Motor Company Inc. that on the 14th of March 1952 it had forfeited the Studebaker automobile, with license number 31682, which belonged to the plaintiff, and on March 14, 1952 the plaintiff was in fact deprived of the possession of the said vehicle by peace officers.

"3. In the afternoon of March 14, 1952, William Padín Vega was driving the De Soto automobile, with license number 39462, belonging to the plaintiff Stuckert Motor Company Inc., on the Cupey Road of the former municipality of Río Piedras, Puerto Rico, being accompanied at that time by Ramón Díaz Bonilla; that a discussion arose between them and William Padín Vega,

---

[1] Section 37 of Act No. 17 of January 19, 1951, as amended by Act No. 397, Laws of Puerto Rico, 1951, reads in part as follows:

"Whenever an insular policeman or public peace officer surprises any person in the act of transporting on any mount or vehicle any weapon in violation of this Act, it shall be the duty of such officer to seize all weapons so found and transported in violation of law. When such weapons unlawfully transported or possessed are seized by a public peace officer, the said officer shall take possession of the mount or vehicle, and shall arrest the person in charge of same, to answer for the offense committed.

"The Attorney General is hereby authorized to confiscate any mount or vehicle so seized, and to sell the same at public sale for the benefit of The People of Puerto Rico. . . ."

using a German pistol, P 38 which he was carrying, then and there wounded Ramón Díaz Bonilla. After these facts occurred, William Padín Vega drove in the said De Soto to the city of Caguas where the Stuckert Motor Company Inc. has an office with Horacio Torres in charge and parked the said De Soto there.

"4. William Padín Vega was then and there engaged in the performance of his duties as salesman for the Stuckert Motor Company Inc., owner of the said De Soto, and was therefore in legal possession of the said automobile with the authorization of the plaintiff.

"5. On March 14, 1952, when the said facts occurred, no insular policeman or public peace officer surprised or saw William Padín Vega transporting in the De Soto automobile the weapon with which he wounded Ramón Díaz Bonilla and did not seize the same in that vehicle or when he was transporting the weapon. William Padín Vega was illegally transporting the said firearm.

"6. After arriving in Caguas and after parking the De Soto automobile, with license number 39462, William Padín Vega boarded in that place a Studebaker automobile, with license number 31682, which belonged to the Stuckert Motor Company Inc., and which he took out with the latter's authorization for the performance of his duties on the road from Gurabo to Trujillo Alto; that he left Caguas driving toward Gurabo and stopped at a gasoline station and bar; that he parked the car there and abandoned it, going into the place of business. Lieut. Francisco Trinidad and Corporal Guillermo Merced, peace officers, presented themselves at that place and questioned Padín Vega in connection with the facts which occurred in Río Piedras. The peace officers, accompanied by William Padín Vega, then searched the Studebaker automobile and found in it a folder containing the pistol P 38, number 96540, which had been in the possession of William Padín Vega.

"7. At the time that William Padín Vega was searched personally by Lieut. Francisco Trinidad and Corporal Guillermo Merced, he was not committing any crime and the officers searched him without a warrant of arrest and without a search warrant.

"8. William Padín Vega never was surprised by any official or peace officer in the act of transporting the firearm in either of the two vehicles previously mentioned."

The trial court pointed out that § 37 is similar in its language to § 26 of the National Prohibition Act. And it cited cases holding that under § 26 a vehicle could be forfeited only when the driver is discovered in the act of transporting intoxicating liquor, and that forfeiture will not lie merely because the evidence shows that intoxicating liquor had previously been transported in the vehicle. *United States* v. *One Ford Coupé*, 272 U. S. 321; *The Jugoslavia*, 21 F. 2d 99 (Dist. Ct., La., 1927); *United States* v. *One Buick Automobile*, 33 F. 2d 353 (Dist. Ct., Ga., 1929); *The Algie*, 56 F. 2d 388 (Dist. Ct., N. Y., 1932). The lower court therefore concluded that under the foregoing authorities the forfeiture of the De Soto was not authorized by § 37 of the Weapons Law. And the government does not dispute the correctness of this determination.

The issue before us, however, is whether the lower court erred in affirming the forfeiture of the Studebaker. Asserting that the situation here was different from that involving the De Soto, the trial court reasoned as follows: "It is true that Padín Vega was not surprised while he was driving the said vehicle from the office of Stuckert Motor Company Inc. in Caguas to the gasoline station and bar where it was parked. However, when the said automobile was searched at that place by the police they found the pistol therein. We do not conclude, from the proof stipulated by the parties, that the acts of Padín Vega consisted in arriving at the gasoline station and bar and stopping there with the purpose of completing his journey because he had arrived at his destination. Only in that event could we consider that the transportation had ended. On the contrary, everything seems to indicate that stopping at the gasoline station and bar was an incident of the trip, and that he therefore was to continue his journey, either on the road from Gurabo to Trujillo Alto, which was the place where he was going to perform the duties assigned to him by the plaintiff, or to return to Caguas. Under such circumstances, and different

from what occurred with the De Soto vehicle, we can state that Padín Vega was surprised while he was in illegal possession of a weapon in the Studebaker, and that such possession was incidental to its transportation, making the case fall within § 37 of the Weapons Law. *Cf. United States* v. *One Nash Sedan Automobile, et al.*, 29 F. 2d 1009."

It is true that the stipulation states that Padín Vega "abandoned" the car; but we regard that as simply a matter of poor choice of language in view of the remainder of the stipulation indicating fairly clearly that his journey had merely been temporarily interrupted. We therefore agree with the lower court that it was entitled to draw the inference from the stipulated facts that the car was parked at the gasoline station and bar by virtue of a temporary interruption of transportation which had begun but had not yet terminated. Under these circumstances we think the automobile was subject to forfeiture under § 37 of the Weapons Law. See Annotation, 61 A.L.R. 1002.

Despite the similarity in language between § 26 of the National Prohibition Act and § 37 of our Weapons Law, we do not regard the cases under the former as controlling in the matter before us. In the first place, inasmuch as the Prohibition Act presented many peculiar problems, the cases decided under it frequently are inapplicable in other fields. In the second place, the Federal courts were constantly plagued during the prohibition era with the problem of whether forfeiture of a vehicle should be under the tax laws or under § 26 of the Prohibition Act. This was important as the former did not, as did § 26, protect the interests of innocent lienors or owners. *Richbourg Motor Co.* v. *U. S.*, 281 U. S. 528; *United States* v. *One Ford Coupé, supra; The Czecho-Slovakia*, 58 F. 2d 746 (C. A., 5, 1932) ; *United States* v. *One Buick Coupé*, 54 F. 2d 800 (Dist. Ct., Fla., 1931) ; *Corriveau* v. *United States*, 53 F. 2d 735 (C. A., 1, 1931) ; *Maniscalco* v. *United States*, 53 F. 2d 737 (C. A., 1, 1931) ; *United States* v. *One Studebaker Coach Automobile,*

32 F. 2d 866 (C. A., 9, 1929); *United States* v. *One Packard Roadster Automobile,* 29 F. 2d 424 (Dist. Ct., Cal., 1928). The government therefore usually argued—at times successfully—that no person was apprehended in the act of transporting intoxicating liquor in a vehicle in order to bring the action under the tax laws rather than the Prohibition Act to the prejudice of innocent owners or lienors. But here we have a state statute where no such choice has to be made in the different field of enforcement of the Weapons Law.

The writ of certiorari will be discharged.

Mr. Justice Pérez Pimentel did not take part in the decision of this case.