STUCKERT MOTOR COMPANY, INC., peticionaria, *v.* TRIBUNAL DE DISTRITO DE PUERTO RICO, SECCIÓN DE SAN JUAN, HON. PEDRO PÉREZ PIMENTEL, JUEZ, demandado; ESTADO LIBRE ASOCIADO DE PUERTO RICO, interventor.

Número 1960.
*Sometido:* 4 de febrero de 1953. *Resuelto:* 7 de abril de 1953.

*James R. Beverley, F. Castro Amy* y *R. Rodríguez Lebrón,* abogados de la peticionaria; *Hon. Secretario de Justicia Interino J. B. Fernández Badillo* y *Omar Cancio Sifre, Procurador Auxiliar,* abogados del interventor, demandado en el pleito principal.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del tribunal.

Se trata de una demanda radicada ante el anterior tribunal de distrito por Stuckert Motor Company, Inc., contra El Pueblo de Puerto Rico, en la que se alega que el demandado confiscó dos vehículos de motor, un De Soto y un Studebaker, propiedad de la demandante, en contravención del artículo 37 de la Ley de Armas de Puerto Rico.[1]   Habiendo las partes estipulado los hechos de este caso, el tribunal sentenciador resolvió que el De Soto había sido indebidamente confiscado y ordenó al demandado que lo devolviera a la demandante.   No obstante, confirmó la confiscación del Studebaker.   Expedimos el auto de *certiorari* a solicitud de la demandante con el fin de revisar la sentencia del anterior tribunal de distrito en tanto en cuanto confirmó la confiscación del Studebaker.

---

[1] El artículo 37 de la Ley núm. 17 de enero 19, 1951 (Leyes de 1950–51, pág. 427), según fué enmendado por la Ley núm. 397, Leyes de Puerto Rico, 1951 ((1) pág. 993), prescribe en parte como sigue:

"Cuando un policía insular o funcionario de orden público sorprendiere a cualquier persona en el acto de transportar en cualquier montura o vehículo cualquier arma en violación a la presente Ley, será deber de tal funcionario incautarse de toda arma así encontrada y transportada en violación a la Ley.   Cuando tales armas transportadas o poseídas ilegalmente sean ocupadas por un oficial de orden público, dicho funcionario tomará posesión de la montura o vehículo y deberá arrestar a la persona a cargo del mismo para que responda por el delito cometido.

"El Procurador General queda por la presente autorizado para confiscar cualquier montura o vehículo así ocupado y venderlo en pública subasta para beneficio de El Pueblo de Puerto Rico. . . ."

■ La siguiente fué la estipulación de hechos en la cual el tribunal inferior basó su sentencia:

"1. El día 21 de marzo de 1952 El Pueblo de Puerto Rico, actuando a través del Fiscal Auxiliar, Hon. Francisco Coll Moya, notificó a la demandante Stuckert Motor Company, Inc., haber confiscado el día 20 de marzo del mismo año el vehículo marca De Soto con licencia número 39,462 y en efecto el referido día 20 de marzo la demandante fué privada por agentes del orden público de la posesión de dicho vehículo, que es de su propiedad.

"2. El mismo día 21 de marzo de 1952 El Pueblo de Puerto Rico, actuando también a través del Fiscal Auxiliar, Hon. Francisco Coll Moya, notificó a la demandante Stuckert Motor Company, Inc., haber confiscado el día 14 de marzo de 1952 el vehículo marca Studebaker, con licencia número 31,682, propiedad de dicha demandante, y en efecto el día 14 de marzo de 1952 la demandante fué privada por agentes del orden público de la posesión del susodicho vehículo.

"3. En horas de la tarde del día 14 de marzo de 1952, William Padín Vega conducía el automóvil marca De Soto con licencia número 39,462, propiedad de la demandante Stuckert Motor Company, Inc., por la carretera del Cupey del antiguo municipio de Río Piedras, Puerto Rico, yendo en ese momento acompañado de Ramón Díaz Bonilla; que tuvieron una discusión entre sí y William Padín Vega haciendo uso de una pistola alemana, P38 que portaba, hirió allí y entonces a Ramón Díaz Bonilla. Una vez cometidos esos hechos William Padín Vega se trasladó en el indicado vehículo marca De Soto a la ciudad de Caguas donde la Stuckert Motor Company, Inc., tiene una oficina que representa Horacio Torres y allí estacionó el mencionado vehículo marca De Soto.

"4. Que William Padín Vega allí y entonces estaba en gestiones oficiales como empleado vendedor de la casa Stuckert Motor Company, Inc., dueña del vehículo, marca De Soto antes mencionado, estando por tanto dicho Padín Vega en la posesión legal del susodicho automóvil y con la autorización de la demandante.

"5. Que ese día 14 de marzo de 1952, cuando ocurrieron los hechos antes referidos, ningún policía insular ni ningún oficial del orden público sorprendió o vió a William Padín Vega transportando en el vehículo De Soto el arma con la cual hirió a Ramón Díaz Bonilla ni le ocuparon la misma en ese vehículo o cuando él la estaba transportando. Dicho William Padín Vega transportaba ilegalmente la referida arma de fuego.

"6. Una vez en Caguas y después de haber estacionado el automóvil De Soto, con licencia número 39462, William Padín Vega abordó allí un automóvil marca Studebaker con licencia número 31682, propiedad de la Stuckert Motor Company, Inc., con autorización de ésta y para gestiones oficiales suyas en la carretera de Gurabo a Trujillo Alto; que salió de Caguas en dirección a Gurabo y se detuvo en un puesto de gasolina y bar y allí estacionó el vehículo y lo abandonó, penetrando en el negocio. Allí se personaron los agentes del orden público, el Teniente Francisco Trinidad y el Cabo Guillermo Merced, quienes interrogaron a Padín Vega en relación con los hechos ocurridos en Río Piedras. Entonces los agentes del orden público en compañía de William Padín Vega registraron el automóvil Studebaker y en él encontraron una carpeta de cuero (*folder*) la que contenía la pistola P38, numero 96540, y de la cual estaba en posesión dicho William Padín Vega.

"7. Ese día, en los momentos en que William Padín Vega fué registrado personalmente por el Teniente Francisco Trinidad y por el Cabo Guillermo Merced, él no estaba cometiendo delito público alguno y los agentes le registraron sin orden de arresto y sin orden de allanamiento.

"8. William Padín Vega nunca fué sorprendido por ningún oficial o agente del orden público en el acto de transportar el arma de fuego en ninguno de los dos vehículos anteriormente mencionados."

El tribunal sentenciador indicó que el artículo 37 es similar en su lenguaje al artículo 26 de la Ley Nacional de Prohibición. Y citó jurisprudencia al efecto de que bajo el artículo 26 un vehículo puede ser confiscado solamente cuando se sorprende al conductor en el actó de transportar bebidas embriagantes, y que no procede la confiscación meramente porque de la evidencia surja que en dicho vehículo anteriormente se habían transportado bebidas embriagantes. *United States* v. *One Ford Coupe*, 272 U.S. 321; *The Jugoslavia*, 21 F.2d 99 (Dist. Ct., La., 1927); *United States* v. *One Buick Automobile*, 33 F.2d 353 (Dist. Ct., Ga., 1929); *The Algie*, 56 F.2d 388 (Dist. Ct., N. Y., 1932). Por consiguiente, el tribunal inferior resolvió que bajo la anterior jurisprudencia

la confiscación del De Soto no estaba autorizada por el artículo 37 de la Ley de Armas.   Y el gobierno no cuestiona la corrección de esta determinación.

■ Sin embargo, el problema ante nos es determinar si la corte inferior cometió error al confirmar la confiscación del Studebaker.   Manifestando que en el caso de éste la situación era diferente a la del De Soto, el tribunal sentenciador razonó como sigue: "Es cierto que Padín Vega no fué sorprendido mientras conducía dicho vehículo desde la casa Stuckert Motor Co., Inc., en Caguas hasta el puesto de gasolina y bar donde fué estacionado.   Sin embargo, en ese sitio y al ser registrado dicho automóvil por la policía encontraron en el mismo, la pistola.   La prueba, según fué estipulada por las partes, no nos lleva a la conclusión de que las gestiones de Padín Vega consistieron en llegar hasta el puesto de gasolina y bar, y detenerse en ese sitio, dando fin a su viaje, por haber llegado a su destino, en cuyo caso únicamente podíamos considerar que el acto de la transportación había terminado.   Por el contrario, todo parece indicar, que la parada en esa estación de gasolina y bar, fué un incidente del viaje, y que por tanto, había de continuar su camino bien hacia la carretera de Gurabo a Trujillo Alto, que era el sitio donde iba a realizar las gestiones encomendádasle por la demandante, o bien de regreso a la ciudad de Caguas.   Bajo tales circunstancias y a diferencia de lo ocurrido con el vehículo De Soto, podemos afirmar que Padín Vega fué sorprendido mientras poseía ilegalmente un arma de fuego en el vehículo Studebaker, y que tal posesión era incidental a su transportación, por lo que el caso cae dentro del artículo 37 de la Ley de Armas.   *Cf. United States* v. *One Nash Sedan Automobile, et al.,* 29 F.2d 1009."

Es cierto que la estipulación dice que Padín Vega "abandonó" el automóvil; pero consideramos esta expresión como una elección pobre de palabra, en vista del resto de la estipulación que indica con razonable claridad que su viaje meramente fué interrumpido temporalmente.   Por tanto, conve-

nimos con el tribunal inferior en que tenía derecho a inferir de los hechos estipulados que el automóvil estaba estacionado en el puesto de gasolina y bar por razón de una interrupción temporal en la transportación, que había comenzado pero que aún no había terminado. Bajo estas circunstancias somos de opinión que el automóvil estaba sujeto a confiscación de conformidad con el artículo 37 de la Ley de Armas. Véase la Anotación, 61 A.L.R. 1002.

No empece la similitud en lenguaje entre el artículo 26 de la Ley Nacional de Prohibición y el artículo 37 de nuestra Ley de Armas, no creemos que los casos resueltos bajo la primera controlan el asunto que pende ahora ante nos. En primer lugar, toda vez que la Ley de Prohibición presentaba muchos problemas peculiares, los casos resueltos bajo la misma frecuentemente no son de aplicación en otros campos. En segundo lugar, las cortes federales tenían constantemente ante sí durante la época de la prohibición el difícil problema de si el procedimiento para la confiscación de un vehículo caía bajo las leyes contributivas o bajo el artículo 26 de la Ley de Prohibición. Esto era importante ya que la primera no protegía, como lo hacía el artículo 26, los intereses de terceros o dueños inocentes. *Richbourg Motor Co.* v. *United States,* 281 U.S. 528; *United States* v. *One Ford Coupe,* supra; *The Czecho-Slovakia,* 58 F.2d 746 (C. A., 5, 1932); *United States* v. *One Buick Coupe,* 54 F.2d 800 (Dist. Ct., Fla., 1931); *Corriveau* v. *United States,* 53 F.2d 735 (C.A., 1, 1931); *Maniscalco* v. *United States,* 53 F.2d 737 (C.A., 1, 1931); *United States* v. *One Studebaker Coach Automobile,* 32 F.2d 866 (C. A., 9, 1929); *United States* v. *One Packard Roadster Automobile,* 29 F.2d 424 (Dist. Ct., Cal., 1928). Por tanto el gobierno usualmente alegaba—a veces con éxito—que no se aprehendía a ninguna persona en el acto de transportar bebidas embriagantes en un vehículo, con el fin de instar la acción bajo las leyes contributivas en vez de bajo la Ley de

Prohibición en perjuicio de dueños o terceros inocentes. Pero aquí tenemos un estatuto estadual en donde no hay que hacer tal elección, en el campo distinto de poner en ejecución la Ley de Armas.

*El auto de certiorari será anulado.*

El Juez Asociado Señor Pérez Pimentel no intervino.