EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE PONCE, HON. HÉCTOR RUIZ SOMOHANO, JUEZ, demandado; ELSIE TORRES, *et al,* interventores.

Número 2067.

*Sometido:* 7 de abril de 1954.   *Resuelto:* 30 de junio de 1954.

*Hon. Secretario de Justicia José Trías Monge y José Antonio Arabía, Procurador Auxiliar,* abogados del peticionario; *Héctor Lugo Bougal,* abogado de los interventores, demandantes en el pleito principal.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del Tribunal.

Elsie Torres, asistida de su esposo Ismael Miranda, inició en el Tribunal Superior, Sala de Ponce, procedimiento para impugnar la confiscación de un automóvil de su propiedad —descrito en la demanda—dedicado al servicio público, que le fuera confiscado por el Estado Libre Asociado de Puerto Rico de acuerdo con la Ley núm. 17 de 19 de enero de 1951 (Leyes de 1950–51, pág. 427), según enmendada por la 397 de 10 de mayo del mismo año ((1) pág. 993), conocida como Ley de Armas de Fuego de Puerto Rico. Después de un juicio en sus méritos el tribunal declaró con lugar la demanda, ordenando la devolución y entrega a la demandante del vehículo objeto del procedimiento. Para revisar esa sentencia expedimos el auto de *certiorari.*

Los hechos que dieron motivo a la confiscación, según los encontró probados el juez sentenciador, son, brevemente expuestos, los siguientes: La demandante era dueña de un automóvil Mercury color negro, licencia P-49-530, modelo 1947–48, el cual dedicaba a la transportación de pasajeros mediante paga. Dicho vehículo era guiado por el chófer Adam Colón Almodóvar, empleado de la demandante, quien percibía un salario de cuatro dólares diarios. En la noche del 20 al 21 de abril de 1953, el referido chófer, al igual que lo hacía casi todas las noches, se dirigió en dicho vehículo al "Bar Sinaloa", ubicado en la carretera de Maragüez, barrio de Ponce, con el objeto de transportar hasta Ponce, mediante paga, a Humberto Zengotita, dueño del referido negocio. En

el trayecto hacia el mencionado establecimiento surgió una discusión entre el chófer Adam Colón y varios de los pasajeros que conducía, nombrados Jesús Feliciano Montero y Carlos Villanueva. El chófer, con el propósito de evitar una desgracia, despojó a Feliciano Montero de un revólver que éste portaba ilegalmente, [1] reteniendo el arma por algunos minutos, la cual, sin embargo, ante su insistencia, devolvió a Feliciano.

A la una de la madrugada, luego de cerrar Humberto Zengotita su negocio, éste, así como Feliciano, Carlos Villanueva y dos mujeres no identificadas, abordaron el automóvil que conducía Adam Colón hacia Ponce. En el trayecto surgió otra discusión, esta vez entre Villanueva y el chófer Colón. A instancias de Villanueva, Colón detuvo la marcha. Bajaron Villanueva y el chófer, insistiendo éste en pelear con aquél. En ese instante un automóvil que marchaba en dirección Juana Díaz–Ponce se detuvo ante la señal de parada que le hizo Villanueva, bajando del mismo el Cabo Pierantoni, de la Policía. Registró al chófer Colón, sin que le encontrara arma alguna, pero al notar que Feliciano sacaba de su seno un revólver y lo ponía en el asiento delantero del automóvil, ocupó el arma, culminando esa ocupación en los procesos criminales contra Feliciano a que hicimos referencia en la nota (1).

El juez sentenciador concluyó que el chófer Adam Colón no fué sorprendido por el Cabo Pierantoni en el acto de *transportar* en el vehículo un arma de fuego y que por lo tanto no procedía la confiscación; que él era inocente de la infracción de ley cometida al encontrarse un arma en el vehículo que conducía; que si hubo posesión de su parte la misma fué incidental, en evitación de una tragedia, y que como el automóvil era uno dedicado al servicio público cuando se ocupó el arma,

---

[1] Feliciano Montero hizo confesión de culpabilidad en tres procesos criminales por distintas infracciones a la Ley de Armas instituídos en su contra en el Tribunal Superior, Sala de Ponce, como consecuencia de estos hechos.

no había presunción de posesión ilegal de la misma por parte de las demás personas en el vehículo, según el art. 14 de la Ley de Armas.

Convenimos con el apelante en que el juez sentenciador cometió error al declarar con lugar la demanda y ordenar la devolución y entrega del automóvil confiscado. Si bien el art. 14 de la Ley de Armas(²) exceptúa de la regla de evidencia *prima facie*, en cuanto a posesión ilegal de un arma, a las personas ocupantes de un vehículo de servicio público que en ese momento estuviere transportando pasajeros mediante paga, tal regla no es necesaria en este caso, ni la confiscación del vehículo está fundada en la misma. El propio tribunal recurrido concluye que el conductor del vehículo tenía "motivos fundados para creer que el arma se está transportando ilegalmente y que el vehículo se utilizó para los fines de la transportación ilegal de dicha arma de fuego." Si bien el chófer Colón no tenía sobre su persona el revólver cuando éste fué ocupado por el cabo Pierantoni, es lo cierto que su conocimiento de que Feliciano portaba ilegalmente un arma lo convirtió en un copartícipe del hecho ilegal de su transportación. La excepción contenida en el art. 14 es para beneficio de aquellas personas que, al utilizar un vehículo de transportación pública, ignoran el hecho de que en el mismo se transporta por alguien, ilegalmente, un arma prohibida.

---

(²) Dicho artículo dispone: "La presencia en un vehículo de cualquiera de las armas, instrumentos o accesorios especificados en los arts. 4, 5, 6, 9 y 10 de esta Ley será evidencia *prima facie* de su posesión ilegal por todas las personas que se encuentren en dicho vehículo al momento en que se hallaren tales armas, instrumentos o accesorios *salvo que se tratare de un vehículo de servicio público que en ese momento estuviere transportando pasajeros mediante paga.* Cuando una de las personas que se encuentren en dicho vehículo sea la que porte en su persona dicha arma, instrumento o accesorio y dicha persona lleve consigo una licencia válida para portar el arma, instrumento o accesorio así hallado, y no estuviere allí bajo amenaza, la presunción de posesión ilegal no cubrirá a las otras personas que se encuentren en dicho vehículo.

"Nada de lo contenido en este artículo será aplicable a los funcionarios públicos, policías, soldados o personas autorizadas por esta Ley para portar armas por razón de su cargo." (Bastardillas nuestras.)

Pero dicha excepción sólo los saca de la regla de evidencia *prima facie*—que no estamos aquí considerando—para los fines de un proceso criminal en su contra. Aquí se trata de un procedimiento dirigido contra el vehículo que sirve de medio para la transportación ilegal del arma.

██ La confiscación de un vehículo usado en la transportación de un arma de fuego bajo el art. 37 de la Ley ( ³ ) es una acción *in rem*, dirigida contra el vehículo mismo y no contra el dueño o quien lo represente. *General Motors Acceptance* v. *Brañuela*, 61 D.P.R. 725; *Gral. Motors Acceptance* v. *Tribl. de Distrito*, 70 D.P.R. 941; *cf. González* v. *Compañía Agrícola*, ante pág. 398; *Metro Taxicabs* v. *Tesorero*, 73 D.P.R. 171. El hecho de que el chófer del vehículo no portara sobre su persona o transportara con fines propios el revólver, no es defensa contra la confiscación del medio usado para la transportación.

El caso de *Sánchez* v. *Tesorero de P. R.*, 72 D.P.R. 133, citado por el tribunal sentenciador, no es aplicable al de autos. Allí el dueño del vehículo de servicio público—que era a la vez su conductor—ignoraba la presencia en el mismo de licor clandestino, que introdujo un pasajero consigo al abordar el automóvil. Aquí no concurre esa circunstancia, pues el chófer no estaba ajeno a la presencia del arma en su vehículo, consintió a su transportación, y nada hizo cuando apareció

---

( ³ ) "Artículo 37.—Cuando un policía insular o funcionario de orden público sorprendiere a cualquier persona en el acto de transportar en cualquier montura o vehículo cualquier arma en violación a la presente Ley, será deber de tal funcionario incautarse de toda arma así encontrada y transportada en violación a la Ley. Cuando tales armas transportadas o poseídas ilegalmente sean ocupadas por un oficial de orden público, dicho funcionario *tomará posesión de la montura o vehículo* y deberá arrestar a la persona a cargo del mismo para que responda por el delito cometido.

"El Procurador General queda por la presente autorizado *para confiscar cualquier montura o vehículo* así ocupado y venderlo en pública subasta para beneficio de El Pueblo de Puerto Rico. El procedimiento para la confiscación de toda propiedad bajo las disposiciones de este artículo se seguirá ante la sección del Tribunal de Distrito de Puerto Rico a la cual le correspondiere entender en el proceso criminal, sea originalmente o en grado de apelación, y se iniciará mediante la ocupación por el Procurador General de la propiedad objeto de la confiscación. Los dueños de la pro-

el Cabo Pierantoni—primera oportunidad en que pudo haber dado cuenta del hecho a la policía. *Cf. Pueblo* v. *Arana*, 72 D.P.R. 821, *Pueblo* v. *Vázquez*, 72 D.P.R. 824.

██ Erró también el juez sentenciador al resolver que el arma no estaba siendo *transportada* en el momento de su ocupación. El hecho de que el automóvil estuviera detenido no es eximente para su confiscación. *Stuckert Motor Co.* v. *Tribl. de Distrito*, 74 D.P.R. 527.

*La sentencia será revocada y la demanda declarada sin lugar.*

El Juez Asociado Sr. Belaval disintió.

---

piedad así ocupada, los que estén a cargo de ella y los que tengan algún derecho o interés conocido en la misma, serán notificados por correo si su dirección fuere conocida y *podrán impugnar la confiscación dentro de los quince (15) días siguientes a la fecha de la notificación de cualquiera de ellos,* mediante demanda contra El Pueblo de Puerto Rico, sin prestación de fianza, que se notificará al Procurador General, debiendo éste formular sus alegaciones dentro de los diez (10) días siguientes a la notificación. El juicio se celebrará sin sujeción a calendario y contra la sentencia que recaiga no habrá otro recurso que el de certiorari para ante el Tribunal Supremo, limitado a cuestiones de derecho. La notificación por correo a los dueños, encargados y otras personas con algún derecho o interés conocido en la propiedad ocupada se entenderá perfeccionada con el mero depósito de la misma en el correo." (Bastardillas nuestras.)