EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* HÉCTOR LUIS DE JESÚS CORDERO y RICARDO RODRÍGUEZ MALDONADO, acusados y apelantes.

*Número:* CR-72-92        *Resuelto:* 30 de mayo de 1973

Santos P. Amadeo, Héctor Martínez Colón y R. N. Ponce de Sánchez-Rivoleda, abogados de los apelantes; J. F. Rodríguez Rivera, Procurador General Interino, y Federico Rodríguez Gelpí, Procurador General Auxiliar, abogados de El Pueblo.

PER CURIAM: Una madrugada a la 1:30 A.M. se presentaron cuatro individuos en un automóvil "Dodge" blanco en el negocio conocido como Bar o Cafetería Marbella, radicado en la calle Luisa [sic] del Condado, propiedad de Alfredo Fernández. Inquirieron de éste y de su cuñado con insistencia por un tal Carlos y un tal Alberto y al decirles Fernández que no los conocía se marcharon. Regresaron a las 5:30 A.M. cuando ya quedaba un solo cliente en el negocio, detuvieron el carro en la entrada del *parking*, se bajó uno con la mano en el bolsillo, habló con Fernández y éste caminó hacia el automóvil, se montó y marchó con los cuatro. El vehículo dio varias vueltas por la zona cercana y durante el paseo el comerciante Fernández sintió que le pegaban en la nuca un objeto metálico como un cañón al mismo tiempo que le requerían para que informara sobre los referidos Carlos y Alberto. Lo dejaron en la Avenida Roosevelt donde tomó un taxi y regresó al negocio.

En el interín, un empleado de la cafetería que había visto a su patrono salir sin despedirse, en las circunstancias descritas, llamó a la policía dándole el número de la tablilla del "Dodge" y haciendo un relato conciso de lo ocurrido en el negocio. La policía envió al aire una alarma radial describiendo el automóvil y sus ocupantes, y respondiendo a la misma un policía de servicio en la Muda, entre Caguas y Río Piedras, detuvo el auto "Dodge" y sus cuatro ocupantes.

Mientras tanto acá en su negocio del Condado, Fernández le relata a Roberto Pietri, Agente del Cuerpo de Investigaciones Criminales, que fue montado a la fuerza en el automóvil y que habían sacado revólveres contra él con gran despliegue de brutalidad y violencia. El detective mientras recibía esta información del perjudicado oye en el radio la noticia de la detención del auto "Dodge" con los cuatro individuos en la Muda y para allá sale acompañado de Fernández, quien al llegar identifica a sus captores y el automóvil. En ese momento procede el agente al arresto de quienes

resultaron llamarse Machado, de Jesús Cordero, Vargas Medina y Rodríguez Maldonado. Como hay sólo dos policías y cuatro detenidos y se encuentran en carretera abierta, el agente Pietri después de registrarlos los hace entrar al coche celular y allí quedan bajo vigilancia del otro policía en lo que Pietri registra el automóvil y encuentra dos revólveres, 1 cuchillo, una cuchilla plegadiza y un *blackjack* (cachiporra).

Acusados en cargos por infracción de los Arts. 8, 6 y 4 de la Ley de Armas (25 L.P.R.A. secs. 411 y sigs.), (¹) pidieron sin éxito la supresión de la evidencia material por ser producto de un arresto y registro ilegales; renunciaron al jurado en los casos del Art. 8 y se sometieron a juicio por tribunal de derecho en el cual no presentaron prueba alguna en su defensa siendo finalmente convictos y sentenciados a penas de presidio, cárcel y multa que el juez sentenciador rehusó suspender bajo régimen probatorio. Resolvemos ahora los recursos de apelación de Héctor Luis de Jesús Cordero y Ricardo Rodríguez Maldonado en los que señalan como errores: (1) invalidez de la renuncia del derecho constitucional a juicio por jurado; (2 y 3) ilegalidad del arresto de los apelantes y registro de sus personas y automóvil por contravenir la Enmienda IV de la Constitución de los Estados Unidos y Art. II, Sec. 10 de la Constitución de Puerto Rico; (4 y 5) nulidad de la llamada presunción establecida por el Art. 14 de la Ley de Armas (25 L.P.R.A. sec. 424) sobre evidencia *prima facie* de posesión imputable a los ocupantes de un vehículo, por ser contraria a los preceptos de igual protección de las leyes y debido proceso de ley encarnados en la Enmienda V de la Constitución de los Estados Unidos; y (6) admisión como evidencia en el

---

(¹) El Art. 8 prohíbe portar, conducir o transportar un revólver cargado sin tener licencia para portar armas. (25 L.P.R.A. sec. 418.)

El Art. 6 castiga la posesión o tenencia de un revólver sin licencia para ello. (25 L.P.R.A. sec. 416.)

El Art. 4 sanciona el acto de poseer, transportar o conducir un *blackjack*, cachiporra o manopla. (25 L.P.R.A. sec. 414.)

juicio de un relato hecho por el agente del C.I.C. Pietri sobre lo que le manifestara el perjudicado Fernández.

(1) En todo el curso del juicio los acusados estuvieron presentes y asistidos por dos abogados que el tribunal calificó como de "reconocida experiencia", y renunciando al jurado uno de ellos se expresó así:

"LIC. VERDEJO:

Vuestro Honor, a nombre de los cuatro representados, queremos renunciar a su derecho constitucional a ser juzgados por un jurado, los cuatro coacusados, están conscientes del derecho que tienen a ser juzgados por doce personas que residan en el Distrito Judicial de San Juan, y estos acusados, nadie les ha hecho promesa en cuanto a que van a salir beneficiados por su renuncia al jurado en cuanto a la Infracción al Art. 8 de la Ley de Armas."

El Juez en su alocución dijo:

"Señores acusados, entre los casos que están señalados contra ustedes en el día de hoy para juicio, hay unos casos por Infracción al Art. 8 de la Ley de Armas, que son de naturaleza grave; por disposición de Ley y siendo un caso grave, tienen ustedes derecho constitucional, tal como lo informó el Lic. Sergio Peña, de que sus casos sean juzgados por jurado, o sea, que doce ciudadanos de su distrito, escogidos por sorteo se constituyan en un tribunal de hechos y una vez oída la prueba y hecha una evaluación de la misma y una ponderación de la misma hagan la adjudicación final en cuanto a su inocencia o culpabilidad en relación a esa Infracción del Art. 8, sus abogados han manifestado al Tribunal que ustedes interesan renunciar a ese derecho constitucional a ser juzgados por jurado en esos casos por Infracción al Art. 8 y prefieren que los casos se vean por tribunal de derecho. Quiero, aunque estamos seguros que el Lic. Sergio Peña y el Lic. Eloy Verdejo los han asesorado en cuanto a ese extremo por ser ambos abogados de reconocida experiencia, sin embargo, quiero dicirles que en cualquier caso que el caso se vea por jurado, cualquier veredicto debe ser por mayoría de nueve a tres, por tribunal de derecho es solo este Juez el que tendrá esa responsabilidad de hacer esa adjudicación final en el caso. Aún así ustedes prefieren que sea por tribunal de derecho?

(contestan todos en la afirmativa)

El Fiscal, los abogados que los representan, algún funcionario del Tribunal le han ofrecido algo a cambio de que ustedes hagan esa renuncia a ser juzgados por jurado en los casos por Infracción al Art. 8?

No, señor:

Alguien les ha hecho algún ofrecimiento para que ustedes renuncien a ese derecho constitucional?

No, señor.

Debo entender entonces, que esa renuncia es voluntaria, libre, espontánea de todos y cada uno de ustedes?

Sí, señor.

Y debe entender el Tribunal que ustedes están, tienen pleno conocimiento de lo que hacen, pleno entendimiento de lo que están renunciando en la mañana de hoy?

Sí, señor.

Y si se le preguntara a alguno de ustedes de aquí a un año o a dos años si ustedes renunciaron voluntariamente a ser juzgados por jurado, qué contestarían ustedes, que sí, que lo renunciaron voluntariamente?

Sí, señor.

Alguien le ha coaccionado a alguno de ustedes para que renuncie a ser juzgado por jurado?

No, señor.

Alguien le ha amenazado?

No, señor.

Por entender el Tribunal que los acusados, que todos son adultos, y al decir adultos, me refiero a que todos pasan de 21 años de edad, por entender el Tribunal que los cuatro acusados han hecho una renuncia voluntaria, libre y espontánea y que la misma ha sido formulada con pleno entendimiento de lo que hacen previo el asesoramiento de sus respectivos abogados y la orientación que le ha dado el Tribunal a esos efectos, se acepta dicha renuncia y dispone que los casos por Infracción al Art. 8 de la Ley de Armas, continúen ventilándose por tribunal de derecho, . . . ." (T.E. págs. 4–7.)

Para juzgar correctamente el grado de inteligencia y espontaneidad en la renuncia por el acusado de su derecho constitucional a juicio por jurado no hay mejor criterio que la

expresión de su abogado en corte abierta junto a su defendido, al efecto de que ha consultado y ponderado con su cliente, en línea con los mejores intereses de la defensa, la alternativa de ir a juicio por jurado o por tribunal de derecho. No puede haber una comunicación y explicación más asequible para el acusado que la trasmitida por su abogado con antelación al juicio, libre del formulismo, la tensión y la rigidez del acto solemne de renuncia escenificado en el tribunal. Insistimos en que los tribunales antes de aceptar una renuncia al juicio por jurado, en estricta observancia de la Regla 111 de Procedimiento Criminal, se cercioren de que el acusado está actuando libre, espontánea e inteligentemente, como salvaguarda adicional de ese preciado derecho, aun cuando no como sustituto del deber del abogado de informar o instruir a su cliente llegando a él por sobre sus limitaciones intelectivas, con un mensaje claro y comprensible de la trascendencia de esa renuncia.

■ En ausencia de alegación en este caso en cuanto a que el abogado haya incumplido su obligación de ilustrar e informar al acusado sobre la naturaleza, operación y adaptación a los hechos de su caso de los dos métodos de juzgar, por jurado o por tribunal de derecho, y examinada la alocución del juez de instancia en el acto formal de renuncia consideramos que fue válida y libre la renuncia del derecho en este caso, pues descansa en hechos razonablemente indicativos de que los acusados tenían una información cabal, y clara conciencia del derecho que renunciaban, y que fueron satisfechas las normas al efecto adoptadas en *Pueblo* v. *Juarbe de la Rosa,* 95 D.P.R. 753 (1968) y *Pueblo* v. *Delgado Martínez,* .96 D.P.R. 720 (1968).

■ (2 y 3) El arresto de los acusados sin mediar orden de magistrado y el subsiguiente registro de sus personas y de su automóvil no excedió los límites de razonabilidad señalados en *Pueblo* v. *Sosa Díaz,* 90 D.P.R. 622 (1964). El agente del Cuerpo de Investigaciones Criminales que practicó

el arresto tenía motivos suficientes para creer que los apelantes habían cometido un delito grave (*felony*) como lo es la portación y transportación de un revólver cargado (Art. 8, Ley de Armas); había recibido un relato y querella del comerciante Fernández que claramente señalaba a los acusados, actuando en concierto y transportando armas de fuego en un automóvil; se había hecho acompañar del querellante a la Muda de Caguas donde estaba detenido el automóvil por la alarma radial de la policía y en su presencia el comerciante identificó tanto a las personas como el vehículo de los acusados. El registro demostró que éstos efectivamente habían cometido el delito grave que les imputaba el perjudicado pero el resultado positivo del allanamiento no era indispensable para la validez y legalidad del arresto, pues en lo relevante a esta situación dispone la Regla 11 de Procedimiento Criminal que "Un funcionario del orden público podrá hacer un arresto sin la orden correspondiente . . . (c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (*felony*), independientemente de que dicho delito se hubiere cometido o no en realidad."

Los agentes del orden público no vulneraron la protección constitucional que contra arrestos y registros ilegales proveen tanto la Enmienda IV de la Constitución de los Estados Unidos como el Art. II, Sec. 10 de la Constitución de Puerto Rico. En la situación con la que se confrontaron debían además proteger su propia seguridad y naturalmente su vida. Se probó que al llegar Pietri con el comerciante al lugar en la carretera donde se había detenido a los apelantes encontró un solo policía lo que enfrentaba dos agentes a cuatro hombres señalados como tipos violentos y armados. Una noción básica de prudencia y cautela justifica plenamente la acción realizada sin solución de continuidad, de una vez registrados los acusados y puestos bajo vigilancia de un policía en el coche celular, proceder al registro del automóvil como incidente coetáneo al arresto. Viciado de bizantinismo está el argumento de que luego de

arrestados los apelantes debió la policía iniciar el trámite de obtención de un mandamiento judicial antes de registrar el automóvil; conduce a la pretensión absurda de que el registro debió llevarse a cabo en la inmediata presencia y bajo supervisión de los detenidos y éstos en plena libertad de movimiento para hacer armas contra los agentes del orden público o escapar. La acción rápida, el registro en el sitio del incidente por los agentes, era evidentemente necesaria ante la posibilidad de que los acusados intentaran el uso de fuerza contra la policía bien para librarse del arresto o desaparecer las armas que habían escondido en el vehículo y en evitación además de que terceras personas lograran acceso a la evidencia criminosa y la ocultaran. Las circunstancias sacan este caso de la regla de *Pueblo* v. *Sosa Díaz*, supra, donde se consideró irrazonable el registro del automóvil porque se llevó a efecto "muy remotamente en tiempo y lugar para que se considerarse como incidental al arresto." (*Preston* v. *United States*, 377 U.S. 364.) En *Sosa Díaz*, no se consideró el registro incidental al arresto porque no se hizo cuando los agentes que tenían causa probable para registrar sin mandamiento llegaron por primera vez al lugar de los hechos. Allí, contrario a lo que ocurre en el presente caso, el registro del automóvil se efectuó en ausencia del apelante, cuando ya éste había sido arrestado y se encontraba bajo custodia policíaca en el cuartel, un lugar distinto y apartado del garage en que se hallaba el vehículo. No era, pues, necesario para evitar la fuga del acusado ni un ataque o agresión a quienes le habían detenido o la destrucción de evidencia relacionada con la comisión del delito por el cual se le acusaba. *Sosa Díaz*, supra, a la pág. 631.

Tampoco es de aplicación a los hechos del presente caso la decisión en *Whiteley* v. *Warden*, 401 U.S. 560, 28 L.Ed.2d 306, 313, porque en éste ni el magistrado que expidió la orden ni el agente que practicó el arresto tuvieron ante sí suficientes hechos (*factual data*) de que el acusado hubiera cometido el crimen. En el caso que ahora resolvemos el agente que arrestó

recibió del propio perjudicado información factual claramente descriptiva de la comisión de un delito grave; y adicionalmente la identificación de los acusados y su vehículo por el comerciante Fernández en el lugar mismo de la carretera donde los había hecho detener el boletín radial([2]) completó el cuadro de hechos determinantes de causa probable.

(4 y 5)   El Art. 14 de la Ley de Armas (25 L.P.R.A. sec. 424) dispone en lo pertinente:

"La presencia en un vehículo de cualquiera de las armas, instrumentos o accesorios especificados en las secs. 414, 415, 416, 419 y 420 de este título será evidencia *prima facie* de su posesión ilegal por todas las personas que se encuentren en dicho vehículo al momento en que se hallaren tales armas, instrumentos o accesorios salvo que se tratare de un vehículo de servicio público que en ese momento estuviere transportando pasajeros mediante paga. Cuando una de las personas que se encuentren en dicho vehículo sea la que porte en su persona dicha arma, instrumento o accesorio y dicha persona lleve consigo una licencia válida para portar el arma, instrumento o accesorio así hallado, y no estuviere allí bajo amenaza, la presunción de posesión ilegal no cubrirá a las otras personas que se encuentren en dicho vehículo."

■   El precepto no establece presunción que lesione la de inocencia del acusado, ni altere el peso de la prueba impuesta al Estado en el procedimiento criminal. Se trata de una regla o norma de evidencia que para ilustrar y orientar la apreciación de los hechos por el juzgador, recoge dos realidades inescapables en el más elemental orden de razonamiento: (a) que las personas ocupantes de un vehículo donde se hallaren armas prohibidas las poseen ilegalmente dado el común e

---

([2]) *Whiteley* v. *Warden,* citado, acoge los medios de comunicación electrónica en auxilio de la rápida detención de ofensores al resolver que la policía puede arrestar siguiendo instrucciones en una alarma o boletín radial, toda vez que puede razonablemente presumir que quienquiera que originó el boletín oficial tenía causa probable para ordenar el arresto. Sin embargo, si resultare lo contrario, este criterio del agente que practica el arresto no está a salvo de la impugnación de la decisión originalmente tomada por el agente que "instigó el arresto" y originó el mensaje radial.

inmediato acceso a las mismas; y (b) que no existiendo entre los pasajeros de un porteador público la unidad de propósito, razón de viajar e identidad de voluntades que aglutinan a los ocupantes de un automóvil privado, la regla de evidencia *prima facie* no se aplicará cuando se estuviere transportando pasajeros mediante paga.

Distinguiendo entre los conceptos de regla de evidencia y presunción ha dicho Wigmore: "La presunción de hecho es un calificativo impropio para la fuerza de raciocinio o el valor probatorio del hecho evidenciario carente de estas consecuencias procesales (de cambiar el peso de la prueba hacia el adversario). 'Son, en verdad, simples argumentos y sólo dependen de su propia fuerza y eficacia para producir creencia o convicción en la mente.' No tienen trascendencia alguna en cuanto al deber de una u otra parte de producir evidencia, porque no teniendo la naturaleza de una regla de derecho el jurado le dará la fuerza o el peso que mejor crea al igual que a cualquier otra evidencia." Wigmore *On Evidence*, tomo IX, sec. 2491, pág. 288, 3ra. ed. Cf. *Estado Libre Asociado* v. *Tribunal Superior*, 76 D.P.R. 842, 845 (1954).

■ Conocida la esencia y el limitado efecto de esta norma de evidencia *prima facie* es patente y claro que ni introduce un elemento de discrimen o clasificación arbitraria entre unas y otras personas negándoles la igual protección de las leyes, ni violenta el privilegio del acusado contra la autoincriminación.

■ (6) El agente del C.I.C. Roberto Pietri quien practicó el arresto y registro declaró en el juicio, relatando los hechos que llevaron a su ánimo la convicción de que se había cometido un delito grave. La información le fue suplida por el comerciante Fernández y era propio que el tribunal pasara una vez más sobre la existencia de causa probable para el arresto y ocupación de evidencia sin mandamiento judicial, pues su testimonio era esencial para la admisión en evidencia

de los frutos del registro. Limitada como fue a este aspecto, dicha declaración no constituyó prueba de referencia utilizada para probar la culpabilidad de los acusados contra quienes ya se había producido evidencia oral suficiente para establecer todos los elementos de los delitos imputados. Un examen de la transcripción de la evidencia revela la existencia de prueba directa suficiente que sostiene la convicción, por lo que dicho testimonio en nada agravó la posición de los apelantes, aparte de su correcta utilidad para admitir la evidencia material ocupada.

No habiéndose cometido los errores señalados *se confirmarán las sentencias apeladas.*

