EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* EDUARDO E. JUARBE DE LA ROSA y HÉCTOR JUARBE DE LA ROSA, acusados y apelantes.

*Número:* CR-66-307    *Resuelto:* 21 de febrero de 1968

---

*Santos P. Amadeo,* abogado de los apelantes; *J. B. Fernández Badillo, Procurador General,* y *J. F. Rodríguez Rivera, Subprocurador General,* abogados de El Pueblo.

SENTENCIA.

En la lectura de la acusación los acusados apelantes hicieron alegación de inocencia y expresaron que se les juzgara por jurado.

El día que comenzó la vista, la transcripción taquigráfica de los procedimientos demuestra:

"HON. JUEZ:

Conocemos la experiencia y es de conocimiento general, que se puede tomar conocimiento judicial de la experiencia y habilidad del distinguido compañero y no necesitaría mucho tiempo para prepararse. Creemos que ese caso lo podríamos ver a las 2:00 de la tarde.

LCDO. QUIÑONES ELIAS:

Estamos dispuestos a oir el doctor y la señora perjudicada en el caso y luego continuaríamos con el caso. Vuestro honor, yo podría permanecer en Sala y repreguntar?

Hon. Juez:

Como no.

El caso se va a ver por Jurado y por Tribunal de Derecho?

Lic. Calero Juarbe:

Por Tribunal de Derecho.

Hon. Juez:

Ustedes oyeron los tres, que el caso se va a ver por Tribunal de Derecho?

Ustedes quieren que se vea por Tribunal De Derecho?

(Los acusados contestan que sí.)

Hon. Juez:

Lo veremos por Tribunal de Derecho."

En Sentencia de 19 de mayo de 1966, *Pueblo* v. *Abreu*, CR. 65-411, revocamos en un caso en que del récord no aparecía la forma en que se había renunciado al juicio por jurado. Se planteaba ahí que no se había hecho personalmente. Como norma general, nos expresamos así: "Los jueces deben estar atentos a que en el récord aparezca claramente que la renuncia al derecho a juicio por jurado se hizo personalmente por el acusado, *luego de advertírsele de lo que la misma significa.*" (Énfasis suplido.)

En *Pueblo* v. *Carmona Rodríguez*, 90 D.P.R. 445, 447 (1964), caso en que al ocurrir la renuncia ésta podía ser hecha por el abogado, cuando menos el juez preguntó al acusado en persona si la hacía *voluntariamente.*

En *Pueblo* v. *Díaz Martínez*, 87 D.P.R. 691, 696 (1963), expresamos que "Cuando el acusado solicita ser juzgado por un jurado, amparándose en el derecho constitucional que tiene a ello, *la renuncia de ese derecho debe surgir de la decisión espontánea o voluntaria del acusado.*" (Énfasis suplido.)

En Sentencia de 18 de noviembre de 1963, *Pueblo* v. *Túa*, 89 D.P.R. 424 (1963), sostuvimos que cuando del récord se desprende que un acusado *entendió* las consecuencias de renunciar a un juicio por jurado . . . luego no podía que-

jarse de que la Sala sentenciadora no ejerciera su función de credibilidad de los testigos al sometérsele el caso por otro expediente. (Énfasis puesto.)

En *Pueblo* v. *Cabán Rosa*, 92 D.P.R. 866 (1965), reafirmamos los anteriores criterios al decir que "Lo fundamental es que la renuncia haya sido hecha voluntaria e inteligentemente."

■ Aparte de las ocasiones específicas mencionadas, si bien un derecho constitucional es renunciable, la doctrina de general aceptación exige que tal renuncia se haga inteligentemente, o con conciencia de lo que la renuncia implica en sus consecuencias.

■ El récord de este caso no contiene elemento alguno que permitiera a la Sala sentenciadora determinar por sí misma si había inteligencia, espontaneidad, voluntariedad y entendimiento en la actitud de los acusados al renunciar al jurado. La Sala no hizo esfuerzo alguno por traer esos elementos al récord, para lo cual era imprescindible que hiciera a los acusados las necesarias explicaciones y advertencias de lo que sus actos significaban, y las consecuencias.

Se deja sin efecto, en reconsideración, la Sentencia de este Tribunal de 15 de diciembre de 1966; en su lugar se revocan las dictadas por la Sala de Aguadilla del Tribunal Superior en 18 de mayo de 1966 y se les concede a los apelantes un nuevo juicio.

Así lo pronunció y manda el Tribunal y firma el Señor Juez Presidente.

(Fdo.) Luis Negrón Fernández
*Juez Presidente*

Certifico:

(Fdo.) Joaquín Berríos
*Secretario*

—O—

Voto separado del Juez Asociado Señor Santana Becerra, concurriendo.

San Juan, Puerto Rico, 21 de febrero de 1968

Aparte de que la norma de mejor derecho según nuestra propia doctrina requiere que se reconsidere la Sentencia original, un estudio de las estadísticas me convence aun más sobre la imperiosa necesidad de que los jueces sean sumamente escudriñadores en lo que respecta a la renuncia del juicio por jurado, como deben serlo en lo que respecta a la renuncia de un juicio adversativo.

El derecho a ser juzgado por un jurado en casos graves lo decretó el Pueblo en la Constitución de 1952. Luego, para mayor efectividad del mismo, la Regla 111 de Procedimiento Criminal dejó sin efecto aquellos dictámenes anteriores que permitieron la renuncia de este derecho por la acción del abogado, no obstante el carácter ya constitucional de la garantía.

En el período comprendido entre 1956–57 a 1966–67, excluyendo el año 1961–62, se resolvieron mediante proceso y vista 22,830 casos graves y homicidios involuntarios con derecho a jurado.(1) De este total, 8083 ó un 35% (.349) fueron decididos por veredicto de jurado. Un 65% por tribunal de derecho. En los años 1957–58 y 1958–59 el por ciento de veredictos fue menor del promedio, un 33%. El 40% que señala el año 1966–67 ha sido el más alto. En 1961–62 se decidieron por jurado 854 casos de 3,380 graves y homicidios involuntarios.(2)

----

(1) No se incluyen aquellos casos menos graves en que, existiendo concurrencia de jurisdicción, se optaron por llevarse originalmente ante el Tribunal Superior. Regla 111 de las de Procedimiento Criminal de 1963; Art. 178 Código Enjuiciamiento Criminal, 1902.

(2) No es posible desglosar con exactitud las declaraciones de culpabilidad en este número de 3,380 casos, pero todo indica que para este

La renuncia al juicio por jurado puede ser en una determinada situación o ante determinadas circunstancias de un caso, un hecho que forme parte de la estrategia de defensa, inteligentemente concebida.

La experiencia acumulada me demuestra, no obstante, un cuadro de renuncia al juicio por jurado de manera casi rutinaria y en situaciones la mayor de las veces en que bien por la naturaleza del delito imputado o ya por las circunstancias presentes, nunca habría una mejor oportunidad de absolución por un tribunal de derecho que por un jurado, que como tribunal del Pueblo juzgando a un semejante, tiene una capacidad de desenvolvimiento para hacer justicia—aun sin quebrantar la norma de conducta que le rige— que le está vedada al juez de derecho.(³)

En otro aspecto, la experiencia acumulada demuestra que las veces en que el delincuente ha pertenecido a una esfera social más alta, de donde no procede el grueso de los acusados, de ordinario no hay renuncia al jurado.

---

año el por ciento de veredictos no era mayor que el promedio.

Estadísticas de la Administración de los Tribunales.

(³) Estos conceptos de John H. Wigmore, vertidos en el año 1929, recientemente reproducidos en *Judicature*, Oct. 1967, exponen la idea con más precisión:—

"La ley y la justicia inevitablemente están en pugna de cuando en cuando. Ello se debe a que la ley es una regla general (aun las excepciones a la regla establecida son excepciones generales); mientras que la justicia es lo equitativo y justo de este caso preciso bajo todas sus circunstancias. . . . La ley—la regla—debe ser puesta en vigor—sus términos exactos, justicia o no justicia. . . . Aquí es donde entra el Jurado. El Jurado, en el aislamiento de su retiro, adapta la norma de ley general a la justicia del caso en particular. Así se evita la odiosidad de la norma de ley inflexible, y se mantiene la satisfacción popular. . . . Eso es lo que hace el juicio por jurado. Suple aquella flexibilidad a la norma legal que es esencial a la justicia y al contentamiento popular. Y esa flexibilidad nunca podría ser otorgada por un juicio del Juez. El Juez . . . debe escribir su opinión, declarando la ley y las determinaciones de hecho. En este expediente público él no puede desviarse una pizca de esas exigencias. El Jurado, y el secreto del salón del jurado, son los elementos indispensables en la justicia popular."

Obviamente, el juicio por tribunal de derecho es más sencillo, más económico en tiempo, menos elaborado y el trabajo en corte de los abogados requiere menos tensión.

Ante la explosión de asuntos judiciales, notable y crítica en la esfera criminal, el volumen de trabajo de abogados defensores y fiscales puede crear la tendencia o inclinación al proceso más sencillo y menos exigente en tiempo y labor, a cambio de lo cual quizás puedan haber concesiones mutuas. Aquí debe entrar la acción activa y vigilante del juez en protección de un derecho constitucional que responde al ciudadano enjuiciado, no a su abogado o a la conveniencia o necesidades del sistema.

Esa intervención activa y vigilante del juez resulta más imprescindible cuando se toma en cuenta que el grueso de los acusados procede de aquel lecho social más impreparado y menos consciente de sus derechos constitucionales, y por ende, menos preparado para hacer renuncia inteligente de tales derechos.