EL PUEBLO DE PUERTO RICO, demandante y apelado, v. BENITO DELGADO MARTÍNEZ, acusado y apelante.

Número: CR-66-461          Resuelto: 6 de diciembre de 1968

*Santos P. Amadeo,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Elpidio Arcaya, Procurador General Auxiliar,* abogados de El Pueblo.

—O—

*Santos P. Amadeo,* abogado del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Elpidio Arcaya, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Benito Delgado Martínez fue acusado y convicto por tribunal de derecho del delito de escalamiento en primer grado.

Apunta en apelación que su sentencia es nula por no haber renunciado expresa e inteligentemente a su derecho a juicio por jurado y porque se le privó de una asistencia de abogado efectiva.

1.—El récord sobre esta cuestión demuestra lo siguiente:

"HON. JUEZ:

¿Están listas las partes?

LCDO. NAVARRO:

Estamos listos.

HON. FISCAL:

Estamos listos.

HON. JUEZ:

¿Este caso se verá por jurado o Tribunal de Derecho?

LCDO. NAVARRO:

Por Tribunal de Derecho.

HON. JUEZ:

¿Compañero, habló con el acusado sobre su renuncia?

LCDO. NAVARRO:

Sí, Señor Juez.

HON. JUEZ:

¿Usted es Benito Delgado Martínez?

ACUSADO:

Sí, señor.

HON. JUEZ:

¿Usted es el acusado en este caso?

ACUSADO:

Sí, señor.

HON. JUEZ:

¿Usted está acusado de un caso de escalamiento en primer grado?

R. Sí, señor.

HON. JUEZ:

Su abogado ha informado al Tribunal que usted renuncia a que su caso se vea por jurado y que usted desea que se vea por Tribunal de Derecho? ¿Eso es correcto?

R. Sí, señor.

HON. JUEZ:

¿Usted no ha recibido oferta, ni amenaza ni ha sido coaccionado para que renuncie que su caso sea por jurado?

R. No, señor.

Hon. Juez:

El Tribunal acepta como voluntaria la renuncia que hace el acusado de que su juicio sea por jurado, y el caso continuará por Tribunal de Derecho."

■ Es evidente que el juez de instancia no le advirtió previamente al apelante lo que significa la renuncia del derecho a juicio por jurado. *Pueblo* v. *Sierra Serrano*, Sentencia de 19 de marzo de 1968; *Pueblo* v. *Juarbe de la Rosa*, 95 D.P.R. 753, Sentencia en reconsideración de 21 de febrero de 1968.

Nada aparece del récord que indique las circunstancias, hechos o conocimiento (1) en que el apelante se basó para contestar que "estaba consciente" de su renuncia al juicio por jurado, o (2) que justificase al juez sentenciador concluir que tal contestación era indicativa de que el apelante conocía el significado y alcance del acto de renunciar al derecho a juicio por jurado, y de la diferencia existente entre el ser juzgado por tribunal de derecho y por jurado.

■ Sin embargo, no encontramos razón alguna para extender el pronunciamiento de *Juarbe*, supra, a casos juzgados con anterioridad a esa decisión. Por lo tanto, con respecto a la renuncia del derecho a juicio por jurado está disponible solamente para personas cuyos juicios empezaron después del 21 de febrero de 1968, fecha de la sentencia de *Juarbe*, supra. Contrario a lo que se afirma, es en *Juarbe* en donde por primera vez, en una forma positiva e inequívoca, establecimos que el juez de instancia tiene la obligación de explicar al acusado lo que significa la renuncia al juicio por jurado y apercibirle de las consecuencias de ello. Las expresiones aisladas contenidas en casos anteriores no tenían el alcance que pretende atribuírsele; el *ratio decidendi* de estas decisiones giró alrededor de si la renuncia había sido hecha personalmente por el acusado tal cual lo requiere la Regla 111 de las de Procedimiento Criminal. En cuanto se refiere a la aplicación retroactiva de lo dicho en *Juarbe*, estamos satisfechos de que conforme se dice en *Roberts* v. *Russell*, 392

U.S. 293 (resuelto en 10 de junio de 1968), no se trata de una norma de procedimiento criminal diseñada para corregir serias fallas en el proceso, y cualquier desviación de la misma no afecta la base de un juicio imparcial y justo, ya que se le aseguró al acusado una oportunidad para la determinación razonable de su culpabilidad o inocencia.[1]

Cualquier duda sobre lo expuesto se disipa al considerar la actuación del Tribunal Supremo federal tomada en 17 de junio de 1968 en *Carcerano* v. *Gladden*, 392 U.S. 631, negándose a extender la doctrina enunciada en *Duncan* v. *Louisiana*, 391 U.S. 145, y *Bloom* v. *Illinois*, 391 U.S. 194— derecho a juicio por jurado en ciertos casos menos grave— a procesos en que el juicio comenzó antes del 20 de mayo de 1968, fecha en que se enunciaron estas dos últimas opiniones.

■ 2.—El apuntamiento de falta de asistencia de abogado se basa en que el abogado que representó al apelante durante el juicio no compareció al acto de dictarse sentencia; que el tribunal designó a otro abogado para que lo representara en dicho acto; que este abogado solicitó se reconsiderara su designación como abogado del acusado; y que el tribunal denegó dicha solicitud.

El apelante, sin embargo, no ha mostrado que dicho abogado actuara o dejara de actuar en forma tal que le causara perjuicio alguno, ni ha mostrado qué perjuicio ha sufrido con motivo de la actuación del tribunal, es decir, que por no gozar el apelante de asistencia legal efectiva en ese momento, no se adujo una o más de las causas relacionadas en la Regla Núm. 168 de las de Procedimiento Criminal por las cuales no procedía dictar la sentencia en este caso. *Pueblo* v. *Hernández*, 94 D.P.R. 116 (1967).

---

[1]Debe recordarse al respecto que hasta la aprobación de las Reglas de Procedimiento Criminal en 1963, la renuncia a juicio por jurado podía ser hecha por el abogado del acusado. *Pueblo* v. *Cabán Rosa*, 92 D.P.R. 866 (1965).

*En vista de lo expuesto, se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 29 de junio de 1966.*

El Juez Asociado Señor Santana Becerra disintió en opinión separada en la cual concurren los Jueces Asociados Señores Hernández Matos y Dávila

—O—

Opinión disidente del Juez Asociado Señor Santana Becerra en la cual concurren los Jueces Asociados Señores Hernández Matos y Dávila

San Juan, Puerto Rico, 6 de diciembre de 1968

En este caso ocurre el mismo vicio judicial que motivó la revocación de la sentencia y la concesión de un nuevo juicio en el de *Pueblo* v. *Juarbe de la Rosa*, resuelto en reconsideración por Sentencia de 21 de febrero de 1968 (95 D.P.R. 753). El vicio es el incumplimiento por parte de la Sala sentenciadora de velar porque se hiciera una renuncia en forma inteligente del derecho constitucional a juicio por jurado.

En nuestra sentencia en el caso de *Juarbe de la Rosa* hicimos el siguiente relato:

"En Sentencia de 19 de mayo de 1966, *Pueblo* v. *Abreu*, Cr. 65-411, revocamos en un caso en que del récord no aparecía la forma en que se había renunciado al juicio por jurado. Se planteaba ahí que no se había hecho personalmente. Como norma general, nos expresamos así: 'Los jueces deben estar atentos a que en el récord aparezca claramente que la renuncia al derecho a juicio por jurado se hizo personalmente por el acusado, *luego de advertírsele de lo que la misma significa.*' (Énfasis suplido.)

En *Pueblo* v. *Carmona Rodríguez,* 90 D.P.R. 445, 447 (1964), caso en que al ocurrir la renuncia ésta podía ser hecha por el abogado, cuando menos el Juez preguntó al acusado en persona si la hacía *voluntariamente.*

En *Pueblo* v. *Díaz Martínez*, 87 D.P.R. 691, 696 (1963), expresamos que 'Cuando el acusado solicita ser juzgado por un jurado, amparándose en el derecho constitucional que tiene a ello, *la renuncia de ese derecho debe surgir de la decisión espontánea* o voluntaria del acusado.' (Énfasis suplido.)

En Sentencia de 18 de noviembre de 1963, *Pueblo* v. *Túa*, 89 D.P.R. 424 (1963), sostuvimos que cuando del récord se desprende que un acusado *entendió* las consecuencias de renunciar a un juicio por jurado . . . luego no podía quejarse de que la Sala sentenciadora no ejerciera su función de credibilidad de los testigos al sometérsele el caso por otros expediente. (Énfasis puesto.)

En *Pueblo* v. *Cabán Rosa*, 92 D.P.R. 866 (1965), reafirmamos los anteriores criterios al decir que 'Lo fundamental es que la renuncia haya sido hecha voluntaria e inteligentemente.'

Aparte de las ocasiones específicas mencionadas, si bien un derecho constitucional es renunciable, la doctrina de general aceptación exige que tal renuncia se haga inteligentemente o con conciencia de lo que la renuncia implica en sus consecuencias.

El récord de este caso no contiene elemento alguno que permitiera a la Sala sentenciadora determina por sí misma si había inteligencia, espontaneidad, voluntariedad y entendimiento en la actitud de los acusados al renunciar al jurado. La Sala no hizo esfuerzo alguno por traer esos elementos al récord, para lo cual era imprescindible que hiciera a los acusados las necesarias explicaciones y advertencias de lo que sus actos significaban, y las consecuencias."

En el fallo de ahora se dice que "no encontramos razón alguna para extender el pronunciamiento de *Juarbe*, supra, a casos juzgados con anterioridad a esa decisión"; y que por lo tanto, la protección constitucional que en dicho caso dimos está disponible solamente para personas cuyos juicios empezaron después del 21 de febrero de 1968, fecha de la sentencia de *Juarbe*. Nada más lejos de la realidad jurídica que la expresión de que no hay razón alguna para extender el pronunciamiento de *Juarbe* a casos ya juzgados.

La decisión de *Juarbe* no establece normas por primera vez. Existía toda esa serie de expresiones y advertencias a las Salas sentenciadoras sobre el adecuado tratamiento que debía dársele a esta garantía constitucional. Los jueces sentenciadores estaban debidamente advertidos, cuando menos, desde el 19 de mayo de 1966 en que, revocando en *Pueblo* v. *Abreu,* dijimos que la renuncia al derecho a juicio por jurado debía aparecer claramente del récord *luego de advertírsele de lo que la misma significaba.* Aun antes de la decisión de *Abreu* ya los jueces sentenciadores tenían la suficiente advertencia al entrar en vigor en el año 1963 la Regla 111 de Procedimiento Criminal, que dejó sin efecto jurisprudencia nuestra menos exigente.

Si bien en clásico derecho las decisiones judiciales tienen pleno efecto legal desde que se emiten y son firmes porque, distinto al proceso legislativo que confecciona la ley, las decisiones la exponen como la ley siempre ha sido, se ha aceptado la facultad de un tribunal para, a la luz de determinadas consideraciones de orden público, aplique un fallo suyo a partir de determinado momento. Véase el problema ampliamente discutido en *Linkletter* v. *Walker,* 381 U.S. 618, que puso punto final al debate de si *Mapp* v. *Ohio,* 367 U.S. 643 se aplicaba a casos definitivamente terminados antes de *Mapp.* Ha sido un factor decisivo en estas consideraciones, el de si la decisión invocada lo es por vía de ataque colateral indirecto, como en *Linkletter* y en *Rivera Escuté,* o si lo es por vía de apelación directa de un fallo que aún no es firme. Véase *Rivera Escuté* v. *Jefe Penitenciaría,* 92 D.P.R. 765 (1965), págs. 783 y ss.

Posteriormente a *Linkletter,* el Tribunal Supremo ha ofrecido ilustraciones de la aplicación de un fallo. A la regla excluidora de evidencia de *Escobedo* v. *Illinois,* 378 U.S. 478 y la de *Miranda* v. *Arizona,* 384 U.S. 436, el Tribunal Supremo en *Johnson* v. *New Jersey,* 384 U.S. 719 le dio efectividad en juicios celebrados posteriormente a las fechas en

que se decidieron aquellos casos. Debe observarse que *John-son* v. *New Jersey* es igualmente un ataque colateral por hábeas corpus a convicciones ya definitivamente terminadas y firmes años antes de *Escobedo* y *Miranda*.

En *Stoval* v. *Denno*, 388 U.S. 293, otro ataque colateral por hábeas corpus, el Tribunal Supremo confirió a su doctrina de exclusión de evidencia de *United States* v. *Wade*, 388 U.S. 218 y de *Gilbert* v. *California*, 388 U.S. 263, efecto a partir de la emisión de estas decisiones.

Según *Linkletter*, y véase *Tehan* v. *Shott*, 382 U.S. 406, deben existir consideraciones de orden público y de administración de justicia para apartarse de la norma general de derecho que justifique el que un tribunal haga regir su decisión a partir de determinado evento.

Es de observarse que esas decisiones son producidas por un cuadro de hechos que no son el proceso judicial en sí. Son actuaciones del Poder Ejecutivo en la función de perseguir el delito que resultan estar reñidas o son una amenaza a las garantías constitucionales del ciudadano que se enfrenta a la justicia. El propósito de tales decisiones ha sido el eliminar tales prácticas ejecutivas o desalentarlas, y ejercer una función de profilaxis en las actuaciones policíacas contrarias a los derechos ciudadanos, al no permitir que el fruto de tales actuaciones tenga utilidad en el proceso judicial.

Cuando se trata de decisiones que corrigen errores propiamente judiciales en el curso de un proceso, máxime cuando dichos errores afectan garantías constitucionales, la norma es otra. Particularmente, cuando no se trata de un ataque colateral y sí de la revisión directa de un fallo que aún no es firme.

*Griffin* v. *Illinois*, 351 U.S. 12, que anuló constitucionalmente una convicción por la negativa de un tribunal estatal a proveerle el récord gratis a un apelante indigente, se aplicó retroactivamente en *Eskridge* v. *Washington Prison Bd.*, 357 U.S. 214. *Jackson* v. *Denno*, 378 U.S. 368, se ha

aplicado retroactivamente, igual que *Gideon* v. *Wainwright*, 372 U.S. 335, sobre el derecho de asistencia de abogado durante el proceso judicial. Las decisiones que anularon convicciones por falta de asistencia de abogado en corte se aplicaron retroactivamente aun en ataque colateral. Este Tribunal aplicó retroactivamente, también en ataque colateral, la norma que sentó en *Ex parte Hernández Laureano*, 54 D.P.R. 416 (1939) sobre el derecho a asistencia de abogado en el proceso y la obligación impuesta al Tribunal de proteger la renuncia de tal derecho velando porque se haga inteligentemente.

Los casos examinados demuestran que es evidente que debe haber algún motivo racional, justo, de orden público y de administración de justicia que justifique el que el efecto jurídico de una decisión judicial no se le aplique a determinado caso. En los casos examinados en que ello ha ocurrido, se ha expuesto y justificado tales consideraciones. La acción no puede ser meramente caprichosa, o un *ipse dixit*.

No acierto a ver en este caso qué motivos hay, no se exponen, para negarle a este apelante el nuevo juicio que le concedimos a Juarbe de la Rosa por igual error judicial y vicio constitucional. La protección constitucional, una vez reconocida, no debería ser objeto de regateo. En mi opinión separada en el caso de *Juarbe de la Rosa* expuse ciertas consideraciones sobre una situación que demuestra la imperiosa necesidad de que los jueces aseguren a los acusados la plena protección constitucional en lo que respecta a una renuncia inteligentemente hecha y con pleno conocimiento de sus consecuencias, del derecho a juicio por jurado.

De *Ex parte Resto*, 55 D.P.R. 725 (1939), son estas palabras del Tribunal por voz del Juez Travieso, Ponente que fue en la decisión de *Hernández Laureano:* (55 D.P.R. 737)

"Los comentaristas de nuestra decisión en el último caso citado, [*Ex parte Hernández Laureano*], se han mostrado alar-

mados creyendo que las puertas de la Penitenciaría se abrirían para poner en libertad a miles de criminales. No existe en verdad motivo justificado de alarma. De los 44 confinados puestos en libertad desde que dictamos la decisión en *Ex parte Hernández Laureano,* la mayor parte había cumplido ya el término necesario para poder solicitar su libertad bajo palabra y hubiesen podido obtenerla por orden del Ejecutivo, sin necesidad de acudir a este tribunal. Pero, aun cuando fuera mucho mayor el número de los liberados, sostendríamos que es preferible abrir las puertas del penal a todos los allí confinados que hubieren sido ilegalmente juzgados y sentenciados, aun cuando fueren culpables, a mantenerlas cerradas para uno solo que siendo inocente haya sido sentenciado en violación de sus derechos constitucionales y sin el debido proceso de ley."

Invoca la opinión mayoritaria la decisión de *De Stefano* v. *Woods* y *Carcerano* v. *Gladden,* 392 U.S. 631, en apoyo de lo que resuelve. Esta decisión hace aplicables la de *Duncan* v. *State of Louisiana,* 391 U.S. 145 y *Bloom* v. *Illinois,* 391 U.S. 194, a juicios celebrados con posterioridad a mayo 20, 1968, fecha en que éstas se emitieron.

Los casos de *Duncan* y *Bloom* obligaron a los Estados a conceder el juicio por jurado que garantiza la Enmienda Sexta, hasta ese momento aplicable sólo en las cortes federales. Alteraron una fundamental norma de derecho en cuanto a la relación federativa en la administración de la justicia.

Las razones de porqué a esas decisiones se les dio sólo efecto prospectivo aparecen claramente expuestas en dichos casos de *De Stefano* y *Carcerano.* Ellas no rigen la situación del caso de autos en que un tribunal dejó de cumplir con normas vigentes de derecho en el curso del juicio, respecto a una fundamental garantía constitucional.

Además, los casos de *De Stefano* y *Carcerano,* al igual que los anteriores que he mencionado, fueron ataques colaterales en procedimientos posteriores a la sentencia. En el de autos, estamos en la apelación directa de la convicción.

Por otra parte, la decisión que puede orientar el caso de autos es la de *Roberts* v. *Russell*, 392 U.S. 293, resuelto en 10 de junio de 1968, y no la de *De Stefano* invocada por la mayoría, que según he dicho, resuelve el efecto prospectivo a darse a *Duncan* y a *Bloom* ante la naturaleza de la cuestión envuelta en estos casos.

En el caso de *Russell* se resolvió que era de aplicación retroactiva la decisión de *Bruton* v. *United States*, 391 U.S. 123—decisión esta última que revocó la doctrina de *Delli Paoli* v. *United States*, 352 U.S. 232, la cual permitía el admitir en el proceso confesiones de coacusados que envolvían a otros coacusados—y que tal aplicación retroactiva tenía efecto tanto en las cortes federales como en las estatales. Dice el Tribunal Supremo en *Russell* (pág. 294):

"Aunque *Bruton* comprendía una acusación federal y esta es una acusación estatal, el derecho a contrainterrogar garantizado por la cláusula de careo de la Enmienda Sexta se extiende a los Estados a través de la Enmienda Decimocuarta. *Pointer* v. *Texas,* 380 US 400; *Douglas* v. *Alabama,* 380 US 415.

'Hemos . . . aplicado retroactivamente normas de procedimiento criminal encaminadas a corregir serios defectos en el proceso de establecer los hechos en el juicio'. *Stovall* v. *Denno,* 388 U.S. 293, 298. Véase *Jackson* v. *Denno,* 378 U.S. 368; *Gideon* v. *Wainwright,* 372 U.S. 335; *Reck* v. *Pate,* 367 U.S. 433; *Linkletter* v. *Walker,* 381 U.S. 618, 639. n. 20; *Johnson* v. *New Jersey,* 384 U.S. 719, 727–728; compárese *Brookhart* v. *Janis,* 384 U.S. 1. A pesar de la instrucción admonitoria, la admisión de la confesión de un acusado que envuelve a un coacusado resulta en 'tal serio defecto'. Se impone, por lo tanto, la retroactividad de lo dictaminado en *Bruton*; el error 'fue dirigido *a la base de un juicio justo porque el aparato procesal no le aseguró* [*al petionario*] *una determinación justa*' de su culpabilidad o inocencia. (Énfasis puesto.)

.    .    .    .    .    .    .    .    .

Y aunque el resultado de la retroactividad sea significativo, el error constitucional presenta un grave riesgo de que la cuestión de culpabilidad o inocencia no haya sido resuelta en forma fidedigna."

No se necesita gran esfuerzo para distinguir la situación que afrontó *Duncan* a la cual *De Stefano* dio efecto prospectivo, y la afrontada en *Bruton,* a la cual *Roberts* v. *Russell* da efecto retroactivo; ni para concluir que la situación en el caso ante nos se rige por la de *Bruton* y la de *Roberts,* y no por la de *Duncan* y *De Stefano.*

Desde julio de 1963, las Reglas de Procedimiento Criminal imponían a los jueces de instancia el deber que no se cumplió en este caso. En mi opinión, cuando menos en los procesos celebrados a partir del 19 de mayo de 1966, fecha en que se resolvió el caso de *Pueblo* v. *Abreu,* debe darse acción correctiva disponiendo un nuevo juicio, si el juez no protegió debidamente la garantía constitucional a juicio por jurado.

Yo revocaría la sentencia y concedería un nuevo juicio.

—O—

EN MOCIÓN DE RECONSIDERACIÓN

San Juan, Puerto Rico, a 7 de marzo de 1969

PER CURIAM: El apelante fue convicto por tribunal de derecho del delito de escalamiento en primer grado. Apeló de la sentencia dictada en su contra y en 6 de diciembre de 1968, y por los fundamentos de la opinión emitida, la confirmamos. Resolvimos entonces (1) no dar efecto retroactivo a la doctrina del caso de *Pueblo* v. *Juarbe de la Rosa,* 95 D.P.R. 753, resuelto en reconsideración en 21 de febrero de 1968, sobre la renuncia del derecho a juicio por jurado y en su consecuencia no aplicarle al caso del apelante cuyo juicio se celebró con anterioridad a *Juarbe* y (2) que la falta de asistencia de abogado en el acto del pronunciamiento de la sentencia no perjudicó los derechos sustanciales del acusado conforme al caso de *Pueblo* v. *Hernández,* 94 D.P.R. 116, resuelto en 24 de febrero de 1967.

El apelante solicitó la reconsideración de nuestra sentencia y por resolución de 17 de enero de 1969 resolvimos oir por escrito y hemos oído al Procurador General respecto al error apuntado sobre falta de asistencia de abogado en el acto del pronunciamiento de la sentencia.

El apelante estuvo representado durante el juicio y hasta que se dictó el fallo condenatorio en 6 de mayo de 1966 por su abogado Sr. Francisco Navarro. Se señaló el 13 de junio de 1966 para el pronunciamiento de la sentencia pero luego fue transferido dicho acto para el día 29 de junio del mismo año. En esa fecha compareció el acusado sin estar asistido de su abogado. El Tribunal designó en ese momento al Ledo. Borrero Ríos para que representara al acusado. Solicitó dicho abogado la reconsideración de su designación pero el tribunal no accedió y procedió a dictar la sentencia.

Surge del récord que el acusado apelante no tuvo una real y efectiva asistencia de abogado en el acto del pronunciamiento de la sentencia. El nombramiento del abogado Sr. Borrero Ríos para que le representara en dicho acto fue *pro forma*. El apelante estuvo pues, huérfano de representación de abogado en esa etapa del procedimiento. La garantía constitucional de la debida representación por abogado en el proceso criminal es extensiva al acto del pronunciamiento de la sentencia. *Ruiz* v. *Rivera, Jefe de Presidio*, 71 D.P.R. 534. No es necesario que el acusado demuestre que la falta de asistencia de abogado en el acto del pronunciamiento de la sentencia le causó perjuicios. La actuación del tribunal al dictar sentencia contra el acusado sin estar éste debidamente asistido de abogado violó su derecho constitucional al debido procedimiento de ley y por consiguiente dicha actuación es nula. *Chandler* v. *Fretag*, 348 U.S. 3; *Mempa* v. *Rhay*, 389 U.S. 128; *McConnell* v. *Rhay*, 21 L.Ed.2d 2.

Consideramos que el caso de *Pueblo* v. *Hernández*, 94 D.P.R. 116, es aplicable al punto aquí en discusión. En aquel caso el acusado estuvo representado por su abogado en el

acto del pronunciamiento de la sentencia. El error señalado consistía en la omisión del juez de preguntar al acusado si existía alguna causa legal por la cual no debía proceder se a dictar sentencia. Bajo todos los hechos de ese caso, según se exponen en la opinión, resolvimos que el acusado no había demostrado que tal omisión le causó perjuicio.

■ Ratificamos ahora nuestra decisión anterior en el sentido de que hasta que el tribunal dictó su fallo, no se privó al acusado en este caso de sus derechos constitucionales ni se cometieron errores que ameriten dejar sin efecto dicho fallo. Sin embargo, como el acto del pronunciamiento de la sentencia está viciado de nulidad, se anulará el mismo y se devolverá el caso para que se pronuncie una nueva sentencia con la garantía constitucional de asistencia de abogado que protege al acusado.

El Juez Asociado Señor Santana Becerra está conforme con el resultado pero mantiene su posición original en cuanto al efecto retroactivo del caso de *Pueblo* v. *Juarbe de la Rosa,* supra.